# School District of Wilkins Township *versus* Milligan.

A school district erected a schoolhouse upon a lot, and occupied it for school purposes for thirty years. A larger schoolhouse becoming necessary, the school board agreed with M., to whom the lot belonged, that if he would pay them a certain amount for the old schoolhouse, they would abandon his land and build a new schoolhouse elsewhere. In an action by the board to recover this amount from M., *Held*, that this contract was not within the Statute of Frauds; that the sale to M. was a deliberate indication of an intent to abandon the property for school purposes, and the matter was made absolute, conclusive and irrevocable by the withdrawal of the board from the possession of the premises; that it was not the deed of the district that was necessary to execute the contract, but its act of abandonment, and that it was entitled to recover.

November 13th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county*: Of October and November Term 1878, No. 172.

Assumpsit by the School District of Wilkins township, against Robert Milligan, to recover the price of an old schoolhouse sold by the plaintiff to the defendant.

At the trial, before Bailey, J., it appeared that the schoolhouse in dispute was situated upon the land of defendant, and that the plaintiff had the right of possession of said schoolhouse only so long as it was used for school purposes. The schoolhouse not being sufficiently large for the purposes of the district, the school-board

[School District of Wilkins Township v. Milligan.]

appointed a committee to purchase from defendant a lot of ground to include the old site. The defendant refused to sell, and the committee then proposed to sell the old schoolhouse to defendant, who referred them to his son. The latter, as agent for his father, agreed to pay $650 for the old schoolhouse, on condition that the school-board would withdraw from his father's property, and purchase a lot elsewhere, on which to erect the new schoolhouse. The committee, on the part of the school board agreed to do this, and as an earnest of the bargain, the defendant's son paid to the committee ten dollars, which they in turn paid over to the treasurer of the school-board. The contract was also duly referred to the board, and an entry thereof made in the school-book. Subsequently, another location was selected for the schoolhouse. A new house was built and the old house and lot were abandoned and suit brought to recover the balance of the purchase-money. The verdict was for the plaintiff, subject to the opinion of the court in banc, whether this contract was within the Statute of Frauds; which court, afterwards, entered judgment for the defendant, *non obstante veredicto ;* when the plaintiff took this writ and assigned this entry of judgment for error.

*W. L. Chalfant,* for plaintiff in error.—A license or privilege to be exercised upon land is not within the Statute of Frauds, and may be granted without a contract in writing : Woodbury v. Parshley, 7 N. H. 237 ; Ameriscoggin Bridge v. Bragg, 11 Id. 103 ; Prince v. Case, 10 Conn. 375 ; Keyser v. School District, 35 N. H. 477. A parol promise to pay for improvements made upon land is not within the Statute of Frauds. They are not an interest in land, but only another name for work and labor bestowed upon it : Spencer v. Darlington, 24 P. F. Smith, 286 ; 4 Kent *450 ; Browne on Statute of Frauds, sec. 233 ; Frear v. Hardenbergh, 5 Johns. 272 ; Lower v. Winters, 7 Cow. 263 ; Scoggin v. Slater, 22 Ala. 687 ; Cassell v. Collins, 23 Id. 676.

If a party has not such an interest in land as can be assigned, the contract is not within the statute : Whittemore v. Gibbs, 4 Foster (N. H.) 484 ; Evans v. Roberts, 5 B. & C. 829 ; Beegle v. Wentz, 5 P. F. Smith 369.

No deed or other writing was necessary to convey the complete title in the land to the defendant : Keyser v. School District, *supra.*

This action is founded upon a promise of the defendant to pay $650, made upon a sufficient and legal consideration, viz., that the plaintiff would not condemn defendant's ground for school purposes, which under the 1st sect. of Act of Assembly, approved 9th April 1867 (Purdon 257, pl. 141), it had a legal right to do.

There was no transfer of any right, but only an agreement not to exercise a right. The plaintiff parted with no interest in the land.

7 NORRIS—7

*Hampton & Dalzell*, for defendant in error.—The plaintiff had a base, qualified or determinable fee in the land: 2 Black. Com., ch. 7; Walsingham's Case, Plowd. 557; 1 Washburne on Real Property 67, 77; State *v.* Brown, 3 Dutch. 20; Schertz *v.* Fitzwater, 5 Barr 126.

Here the plaintiff had an estate which "by possibility might endure for ever." Its endurance depended on whether a schoolhouse was maintained on the land; and the maintenance of the schoolhouse depended on the will of the plaintiff. To determine the condition of the grant was the object of the contract. No pretence is made that the schoolhouse would be of any use to any other party than the owner of the ground. As between the plaintiff and the defendant, who had a reversionary interest in the school-lot, the plaintiff had certainly an assignable interest. And as between the plaintiff and any party willing to take the land and "use it for school purposes," its interest was as certainly not less capable of assignment.

If the plaintiff's interest in the land was not a determinable fee, but a lease, it is then still within the very language of the statute, and was incapable of surrender by a parol contract.

If, on the other hand, it was a license, it was still clearly within the statute. For it is not true, in a general and unqualified sense, that "a license or privilege to be exercised upon land is not within the Statute of Frauds." An executed license in this state, on whose faith expenditures have been made, gives absolute rights: Huff *v.* McCauley, 3 P. F. Smith 206.

And there is a broad distinction between licenses to be exercised upon land which may be granted by parol, and such as amount to leases and require a writing. "Where the act licensed is of such a character that the licensee cannot perform it without actually holding and occupying the grantor's land for the purpose, the permission must be in writing, as the transaction is, in effect, a lease of the premises to that extent:" Brown on Statute of Frauds, sect. 28; Cook *v.* Stearns, 11 Mass. 533.

Contracts *about land*, if more is meant than a three years' lease, must be in writing: Washabaugh *v.* Entriken, 10 Casey 74; Shoofstall *v.* Adams, 2 Grant 209; Moore *v.* Small, 7 Harris 465; Henry *v.* Colby, 3 Brewster 171; Galbreath *v.* Galbreath, 5 Watts 146; Pattison's Appeal, 11 P. F. Smith 294; Yeakle *v.* Jacob et al., 9 Casey 376.

No evidence was offered of any abandonment of the property, and the agreement was never performed by plaintiff.

Mr. Justice GORDON delivered the opinion of the court, January 6th 1879.

It appears from the evidence in this case that for some twenty-five or thirty years the School District of Wilkins Township had

occupied, for school purposes, a small lot of ground belonging to Robert Milligan, the defendant. A one-story brick schoolhouse had been built thereon by the district, and used for the period above stated.

In the year 1874 the directors, considering it necessary to build a new and larger house, applied to the defendant in order to purchase from him, for this purpose, a lot of ground, including the old site. He peremptorily refused to sell at any price. The committee, who were appointed to wait on him, then proposed to sell him the old house; he answered by referring them to his son John, a member of the Allegheny county bar. They afterwards had an interview with John, which resulted in a sale to him, as agent for his father, of the old house for the sum of $650; they agreeing, on part of the school-board, to withdraw from the property and get a lot elsewhere on which to build the new schoolhouse. John, at that time, insisted upon paying to the committee $10 as an earnest of the bargain. This contract was duly reported to the board, was approved and recorded in the school-book. Afterwards another location was selected, a new house built, the old lot and house abandoned, and thus surrendered to the defendant. All this seems very plain and unambiguous, and on the matter being submitted to the jury, a verdict was returned for the plaintiff. The court, however, reserved a point put by the defendant, which point reads in this wise, "Taking all the evidence in the case on the plaintiff's part to be true, the contract proven is within the Statute of Frauds, and the plaintiff cannot recover." On this reserved point the court entered judgment for the defendant *non obstante veredicto.* Our question then is, was this contract within the Statute of Frauds; was a deed from the directors to Milligan necessary to the execution of the agreement between these parties? This leads us to inquire what the bargain was about; what the school board had to sell, and what Milligan bought. For if the contract could not be executed without a deed from the directors, the judgment of the court was right, but if it could be fully executed by a withdrawal by the school board from the premises, then the court was wrong, and judgment should have been entered on the verdict for the plaintiff.

Now, according to the affidavit and admissions of the defendant, he was the owner in fee of the lot in question, and the school district entered and built its house under a mere parol license that it should have the occupancy of it only so long as it was occupied for school purposes. Without stopping to consider whether the minute reciting and approving the sale of the house entered upon the school-book would or would not be a sufficient note in writing under the statute, we may ask what had the district in the property that required a writing of any kind in order to transfer it to Milligan? It had the old house; it had the right, by permission of the owner,

to occupy the lot on which the house stood as long as it was used for school purposes. But the very moment the school district abandoned the house and lot, that moment this property reverted to the owner of the fee, and there was nothing left in the district upon which its deed could operate. What then has the statute to do with this case? The board sold the old house to Milligan, which, in itself, was a deliberate indication of an intent to abandon the property for school purposes, and the matter was made absolute, conclusive and irrevocable by the withdrawal of the board from the possession of the premises, thus leaving Milligan the sole and absolute owner and occupant. Thus we see that it was not the deed of the district that was necessary to execute the contract, but its act of abandonment. That the defendant bargained for and that he got, that gave him all the district ever had, all it did or could sell to him, and nothing now remains for the entire fulfilment of this contract but the payment of the money by the defendant.

> The judgment is reversed and set aside, and it is ordered that judgment be entered on the verdict for the plaintiff.